**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **CRIMINAL NUMBER 26-42** |
| **V.** | : | |
| | : | |
| | : | |
| **SAMUEL MARCUS** | : | |

# DEFENDANT'S SENTENCING MEMORANDUM

Samuel Marcus, a most unusual defendant who has been diagnosed from birth with static encephalopathy and later with autism spectrum disorder (ASD), urges the Court to accept the joint recommendation and impose a sentence of time served with the additional conditions agreed upon by the parties. Mr. Marcus is 33 years old and has no prior arrests or convictions before pleading to the instant offense. Mr. Marcus accepted responsibility and pled guilty to one count of money laundering in violation of 18 U.S.C. §1956(a)(B)(i) and 2. Mr. Marcus has been in federal custody since his arrest February 3, 2026. The defense and government agree with the guideline calculations in paragraphs 31 through 42, and the final advisory range in paragraph 100 of the Presentence Investigation Report (PSR). The undisputed range is 37 to 46 months' incarceration. The defense recognizes the Court is not bound by the joint proposal. However, given the copious evidence of Mr. Marcus' intellectual and emotional deficits as meticulously described by Dr. Steinberg, we urge the Court to impose a sentence of time served with conditions.

In this case, after much conferring about Mr. Marcus' intellectual deficits and his ASD diagnosis, the parties have jointly agreed to a recommendation of time served, which further fulfills the statutory factors of 18 U.S.C. §3553(a) and would be a sentence sufficient but not greater than necessary. Prior to the discussions regarding a reasonable resolution to this case, the defense

retained Dr. Annie G. Steinberg, M.D., to evaluate Mr. Marcus. The Court may already have Dr. Steinberg's report as provided at the time of the change of plea, but it is included herein as "Exhibit A". Dr. Steinberg's comprehensive evaluation relied on numerous and "extensive" outside sources as well as her lengthy interview and testing of the defendant. The defense provided Dr. Steinberg's report to the government prior to the plea hearing. The government recognizes Mr. Marcus' deficits directly contributed to the commission of this crime. The government concedes Mr. Marcus began as the targeted victim of a romance scam. Unfortunately, Mr. Marcus, after being warned by the FBI that he was communicating with scammers from Nigeria, persisted in communicating with them, transferring money and following their instructions. There is no question there are real victims who lost money. Mr. Marcus was also a victim who lost money to more culpable perpetrators. It also appears Mr. Marcus one among several "money mules" who were exploited by a network of scammers.

After much discussion and contemplation of potential resolutions, the parties agreed that a time served sentence would be the most appropriate sentence in this case taking into consideration Mr. Marcus' diagnosis of ASD, his borderline IQ, and the unique facts presented in this case. The government will formally move to dismiss the other counts at the time of sentencing.

Dr. Steinberg's observations of Mr. Marcus and her conclusions are corroborated by many other sources, including Mr. Marcus' educational records, psychological records from the Federal Detention Center, the interviews of Mr. Marcus with FBI agent R.J. Haig, as well as United States Probation Officer Elizabeth Powell. Relevant portions of Dr. Steinberg's observations and conclusions were included in many sections of the PSR. Dr. Steinberg was provided with an abundance of evaluations, impressions, school records and other reports dating back to Mr.

Marcus' toddler years. Her report carefully dissects the multitude of evaluations by several different psychologists and doctors, educational reports, etc. It is clear that Mr. Marcus struggled from birth to meet almost every developmental milestone. Dr. Steinberg's report highlights specific instances and examples of Mr. Marcus' failed social interactions and poor social judgment.

Autism in all its forms is a pervasive developmental disorder. It is a neurological condition, beginning at birth, which severely impairs the social learning skills by which affected persons are able to perceive and learn to understand the nonverbal cues which convey the actual meaning of social interactions. Rather than addressing autism spectrum disorder at length in this memorandum, the defense will rely on Dr. Steinberg's report as well as the PSR, both of which document Mr. Marcus' deficits as they relate to the offense. The offense conduct in this case cannot be disentangled from Mr. Marcus' autism spectrum disorder. First, Mr. Marcus' ASD is directly related to how he got involved with Nigerian scammers, and second, is critical in understanding how he went from victim to perpetrator. As Dr. Steinberg stated in her report, the forensic exam was performed to:

> address Sam Marcus' overall mental health as well as the degree to which the trajectory of his childhood and adolescence has impacted his involvement in and capacity to understand the gravity of the charged offense conduct at the time of the conduct as well as the present time. Relevance of this for necessary treatment, if any, and prognosis is also requested.

The defense acknowledges this is a serious case with real harm. It is clear, however, that Mr. Marcus did not fully appreciate nor understand the severity of his actions as well as the harm he caused. "Sam appeared to understand that many of his behaviors were "wrong", but Sam had close to no insight … he did not appear to understand the impact of his behaviors on others and did not have any significant comprehension of the feelings or thoughts of others…" (Steinberg

at 15). He repeatedly used the term "addicted" when describing his behavior and his communications with the two fraudsters who used the names, Rachel Jude and Ned McMurray.

Mr. Marcus has always had difficulty with social interactions. He is a loner, not necessarily by choice. Dr. Steinberg's report is replete with examples spanning Mr. Marcus' life where he struggled to be accepted. The undersigned has observed Mr. Marcus in the group of chairs at the FDC where inmates sit in a group waiting to visit attorneys. Mr. Marcus never interacts with anyone else, nor does anyone interact with him. Mr. Marcus has no close friends–indeed, no friends at all. This has been a lifelong problem. Dr. Steinberg described Mr. Marcus' social isolation as something that led to his incessant communication with the scammers. Dr. Steinberg also noted that Mr. Marcus was easily manipulated by these same scammers because of his impaired judgment and vulnerability and was unable to stop.

Mr. Marcus began his communications online with an individual he believed was a woman living in the Midwest named Rachel Jude. He stated Rachel Jude shared photos of herself with him and he found her attractive. He likewise sent her photos of himself. After establishing a rapport, Rachel Jude began asking Mr. Marcus for money for various "urgent" necessities. Mr. Marcus eventually started communicating with Ned McMurray. He characterized both people as "his friend" and they asked for money from him so they could come meet him. For a period of time, Mr. Marcus believed Ned and Rachel lived in the United States. At some point, he figured out they were both in Nigeria. Obviously, no face-to-face meeting ever happened. Mr. Marcus continued to communicate with both of them, likely a substitute for any real social life or social interactions.

The jointly proposed sentence accounts for all of the factors identified in 18 U.S.C. § 3553(a), and one that is "sufficient, but not greater than necessary" to satisfy the purposes of

sentencing. 18 U.S.C. §3553(a)(1). The parties agree that Mr. Marcus needs significant structure and oversight of his computer usage once released. Supervised release that includes therapy and addresses the root causes of Mr. Marcus' behavior in this case related to ASD, would satisfy the statutory factors more than additional time in prison.

The nature of this offense is serious and involves real monetary harm to victims. However, as explained by Dr. Steinberg in great detail, Mr. Marcus' deficits made him a perfect target for what is now commonly referred to as a romance scam. The more disturbing aspect of this offense is the fact that Mr. Marcus continued to engage in illegal conduct after several warnings. Again, Mr. Marcus' behavior is more understandable in the context of his intellectual disabilities, extreme obsessiveness, and impulsivity. As Dr. Steinberg points out, "[A]fter he was given the information that what he was doing was wrong, he did not have the cognitive capacity to appreciate the impact of what he was doing…" (Dr. Steinberg at 41). It is the hope and intention of all parties that Dr. Steinberg's recommendations are followed; and that Mr. Marcus is closely supervised, in particular, his internet activity.

The parties make the joint recommendation the Court impose a time served sentence with specific conditions of supervised release. Dr. Steinberg's report details Mr. Marcus' vulnerability in prison. Incarceration in this case could do more harm than good. It is not at all clear that Mr. Marcus fully comprehends and appreciates the cause and effect of his actions and that prison is the result of his own misconduct.

While deterrence is an important factor in this case, it is difficult to measure how additional prison time would serve individual deterrence, or general deterrence given Mr. Marcus' unique cognitive circumstances. Since his arrest, Mr. Marcus has participated in numerous programs documented in the PSR. He should and will continue to participate in

programming that addresses his lack of social connection, his overspending of money, his excessive internet use, among other issues. Mr. Marcus would perhaps benefit by participating in this district's STRIDES program. If Mr. Marcus is unable to obtain employment,[1] he may benefit by participating in community service that is tailored for individuals with disabilities.

The parties have carefully negotiated a sentence that addresses Mr. Marcus' ongoing mental health needs. Given Mr. Marcus' specific cognitive issues and limitations and the vulnerabilities he has, additional time spent in prison would be counterproductive and programs within the BOP would not help Mr. Marcus by addressing his unique and specific needs.

The jointly proposed sentence is a variance below the advisory range. As this Court is aware, the advisory range is not presumed to be reasonable. Mr. Marcus is a unique defendant and the facts of this case, and his history and characteristics make any perceived disparity in the sentence would be completely justified and warranted for the reasons discussed herein.

## III. CONCLUSION

For all the reasons cited herein, and any which may become apparent to the Court at the sentencing hearing, Samuel Marcus, through counsel, respectfully submits the sentence of time served with supervised release, including the conditions outlined in the guilty plea agreement, is the most appropriate outcome in this case.

Respectfully submitted,

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

---

[1] As a result of this offense, Mr. Marcus was terminated from his employment at the Defense Logistics Agency. Mr. Marcus obtained employment after graduating from Temple University after six years. Mr. Marcus was initially a summer intern at DLA through Temple University's Disability Resource Center and later was employed full time.

**CERTIFICATE OF SERVICE**

I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of Defendant's Sentencing Memorandum through Electronic Case Filing and/or electronic mail upon Samuel Dalke, Assistant United States Attorney and Elizabeth Powell, United States Probation Officer.

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

DATE: October 9, 2026